In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO THE PROPOSED INITIATIVE DESIGNATED "GOVERNMENTAL BUSINESS".

David W. Broadwell, Petitioner,

and

Charles R. Grice, Jr. and Dennis Polhill, Respondents,

and

Natalie Meyer, Stephen Erkenbrack and Rebecca Lennahan, Title Setting Board.

No. 94SA94.

Supreme Court of Colorado, En Banc.

June 6, 1994.

David W. Broadwell, pro se.

Grice & Polhill, Charles R. Grice, Jr., pro se.

Dennis Polhill, pro se.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Richard Djokic, First Asst. Attorney Gen., Stephen G. Smith, Asst. Atty. Gen., Regulatory Law Section, Denver, for Title Setting Bd.

Chief Justice ROVIRA delivered the Opinion of the Court.

Petitioner David W. Broadwell brings this original proceeding challenging the action taken by the Initiative Title Setting Board (Board), in setting a title, submission clause, and summary for a proposed constitutional amendment (the Initiative). Designated "Governmental Business," the Initiative would amend the Colorado Constitution to: prohibit, with certain exceptions, the use of public money, personnel, equipment, or supplies to be used for lobbying purposes; provide, with certain exceptions, that no governmental business activity be exempt from any laws imposed on nongovernmental entities or citizens including taxes; impose certain regulatory and financial reporting requirements pertaining to governmental businesses; abolish the application of sovereign immunity to restrict liability resulting from governmental business activities; and allow for the enforceability of those provisions in the courts through individual or class civil actions and permit damages and reasonable costs to be awarded to successful plaintiffs and defendants.

Petitioner challenges the ruling of the Board arguing that the title, submission clause, and summary are misleading, inadequate, and do not fairly express the true meaning and intent of the Initiative. For the reasons set forth below, we affirm the ruling of the Board in part, reverse in part, and remand the matter to the Board with directions.

I

The proponents of the Initiative submitted a draft of the Initiative to the legislative council and the office of legislative legal services for review and comment. The Board convened and set the title, submission clause, and summary for the Initiative. Petitioner requested a rehearing interposing a number of objections to the title, submission clause, and summary fixed by the Board. The Board accepted two of petitioner's objections and rejected the rest. The title set by the Board reads as follows:

*Title*

AN AMENDMENT TO THE COLORADO CONSTITUTION TO DECLARE THAT THE SAME LAWS ENACTED TO PROTECT CONSUMERS AND ENSURE OPEN GOVERNMENT SHALL BE ENFORCED UPON GOVERNMENTS IN COLORADO; TO LIMIT THE USE OF PUBLIC RESOURCES FOR LOBBYING; TO REQUIRE THAT GOVERNMENTAL BUSINESS ACTIVITIES USE GENERALLY ACCEPTED BUSINESS ACCOUNTING AND FINANCIAL REPORTING STANDARDS; TO PROVIDE THAT NO GOVERNMENTAL BUSINESS ACTIVITY SHALL BE EXEMPT FROM THE LAWS IMPOSED UPON NONGOVERNMENTAL ENTITIES OR CITIZENS; TO ELIMINATE ANY LIMITATION OF LIABILITY FOR GOVERNMENTAL BUSINESSES UNDER THE DOCTRINE OF SOVEREIGN IMMUNITY; TO PROVIDE THAT A GOVERNMENTAL BUSINESS ACTIVITY THAT PROVIDES GOODS OR SERVICES TO THE PUBLIC IN COMPETITION WITH THE PRIVATE SECTOR SHALL NOT BE EXEMPT FROM ANY TAX THAT WOULD BE APPLICABLE TO A SIMILAR PRIVATE SECTOR BUSINESS; TO RE-

MOVE ANY RESTRICTION ON A GOVERNMENT PROVIDING GOODS AND SERVICES THROUGH CONTRACT; AND TO STATE THAT, FOR PURPOSES OF ANY LAW PROHIBITING THE USE OF PUBLIC FUNDS FOR CAMPAIGN PURPOSES, A CAMPAIGN FOR AN INITIATIVE OR REFERENDUM COMMENCES AT THE TIME THAT PROPONENTS FILE THE MEASURE FOR THE REVIEW AND COMMENT HEARING WITH LEGISLATIVE STAFF.

The submission clause begins with the phrase, "SHALL THERE BE....," but is otherwise identical to the title in all respects. The summary fixed by the Board is as follows:

### Summary

This measure declares that the same laws enacted to protect consumers and ensure open government shall be enforced upon governments in Colorado.

Public money, personnel, equipment, or supplies may not be used for lobbying purposes, with the exception that statewide elected officials and cabinet departments of state government may utilize one lobbyist and that such persons must comply with all legal requirements imposed on lobbying activities. Any other government may lobby the General Assembly or other policy-making agencies only through elected officials of those governments.

Governmental business activity means a function of a government which offers any goods or services to the public for which there are reasonable substitutes provided by nongovernmental entities. No governmental business activity shall be exempt from any laws imposed on nongovernmental entities or citizens. No government shall be restricted from providing goods and services through contracts. Governmental business activities may not use any limitation on liability under the doctrine of sovereign immunity. Governmental business activities must use generally accepted business accounting and financial reporting standards to portray their true financial condition. A governmental business activity that provides goods or services to the public in competition with the private sector shall not be exempt from any tax that would be applicable to a similar private sector business activity. Unless the General Assembly enacts statutes to the contrary, the measure exempts public schools, law enforcement, the judiciary, public health services, and other activities related to public safety. The General Assembly may provide by law for governments to waive one or more of the measure's provisions for business activities that are declared to be essential to the citizens of such governments.

The provisions of the measure are enforceable through the courts through individual or class civil actions, and the court may award damages and reasonable legal costs and attorney fees to successful plaintiffs, and reasonable legal costs and attorney fees to successful defendants if the court finds that the suit was frivolous.

The measure states that, for purposes of any statute or regulation prohibiting the use of public funds for campaign purposes, a campaign for an initiative or referendum is deemed to commence at the time that proponents file the measure for the review and comment hearing with the legislative research and drafting offices of the General Assembly.

This measure could have a fiscal impact on state and local government by requiring governmental business activities to pay taxes and by subjecting state and local governments to the costs of meeting additional regulatory and financial reporting requirements and to increased costs of judgments, legal representation, and insurance. The amount of the fiscal impact is indeterminate, since it is not clear which activities will be classified as governmental business activities.

The measure may result in savings to local governments because they cannot engage in some lobbying activities, although these savings could be offset by the cost of lobbying by elected officials. The amount of such savings and costs is indeterminate.

## II

The duties imposed on the Board in designating a title, submission clause, and summary of a proposed initiative, as well as our review of that process, are well-settled and need not be repeated here. *See, e.g., In the Matter of the Proposed Initiative on School Pilot Program*, 874 P.2d 1066, 1069–70 (Colo. 1994) (detailing the Board's duty and the standards this court applies in reviewing the Board's actions); *In the Matter of Proposed Initiative on "Limited Gaming IV"*, 873 P.2d 733, 739–40 (Colo.1994) (same); *In the Matter of Proposed Initiative on Tobacco Tax Amendment 1994*, 872 P.2d 689, 693–94 (Colo.1994) (same).

With these familiar principles in mind, we turn to the merit of petitioner's arguments.

## III

### A

█ Petitioner argues first that the Board should not have included a reference to the "Declaration of the People" which appears in the text of the Initiative because it is redundant and contains inflammatory and misleading catch phrases which should be avoided. *See Say v. Baker*, 137 Colo. 155, 160, 322 P.2d 317, 320 (1958). That reference, as contained in the summary, reads as follows: "This measure declares that the same laws enacted to protect consumers and ensure open government shall be enforced upon governments in Colorado." A nearly identical reference is contained in the title and submission clause. *See supra* p. 873.[1]

Petitioner argues that inclusion of this sentence is impermissible inasmuch as it constitutes only a reiteration of the more specific provisions of the Initiative. As such, it is nonsubstantive, redundant, and its inclusion conflicts with the Board's mandate to be brief and concise.

█ We agree with petitioner that the reference to the declaration is redundant. At the public hearing, Dennis Polhill, a proponent of the Initiative, conceded that the reference to the declaration was "just a repeat of the same concept" contained in the substantive provisions of the text of the Initiative. Nevertheless, simply because a title, submission clause, and summary contain some redundant phrases does not necessarily mean that the Board has violated its duty to be brief. The brevity of a title, submission clause, and summary is a relative measure and, while this sentence could have been omitted, its inclusion does not. render the proposal so lengthy or elaborate as to be contrary to the mandate that titles, submission clauses, and summaries be concise. To conclude otherwise would put this court in the position of reviewing language chosen by the Board and attempting to edit that language to its least common denominator, deleting everything which is not essential to clearly and accurately reflect the purpose of the proposed initiative. To do so would be beyond the proper scope of our review: so long as the Board's language is neither misleading nor unfairly reflects the intent of the initiative, we will not meddle with the language chosen by the Board. *In the Matter of the Proposed Initiative on the Drinking Age in Colorado*, 691 P.2d 1127, 1132 (Colo. 1984).

█ Petitioner additionally argues that the reference to the declaration should be stricken because it is misleading and contains catch phrases and slogans. We agree.

Characterizing the Initiative as one that applies all laws intended for "consumer protection" and designed to insure "open government" is misleading. First, while it is true that imposing tort liability on governmental business activities, for example, does apply laws intended for consumer protection to government, the Initiative is intended to do much more. For instance, it also imposes

1. In its answer brief, the Board asserts that petitioner's argument is without merit based, in part, on the fact that the title, submission clause, and summary do not contain the phrase "Declaration of the People." The Board has apparently misconstrued petitioner's argument. Petitioner does not argue that inclusion of the word "declaration" is impermissible. Rather, he argues that the reference to the declaration that the Initiative applies all laws enacted for "consumer protection" and to "ensure open government" shall apply to the government is misleading, constitutes the use of slogans, and is impermissible. It is the phrases "consumer protection" and "open government" that petitioner takes issue with, not use of the term "declaration."

tax liability on governmental business activities and restricts the means and extent of governmental lobbying—both of which are legal obligations that have no relevance to "consumer protection." As such, characterizing the Initiative as a "consumer protection" proposal is misleading inasmuch as it emphasizes a single aspect of the Initiative that is distinct from and unrelated to the much broader intent of Initiative.

Similarly, the reference to "open government" has little relation to the actual intent of the Initiative. Again, the Initiative is intended to circumscribe the means and extent of governmental lobbying, imposes tax liability on governmental business activities, and abrogates the doctrine of sovereign immunity for such activities. None of these things have anything to do with "open government" as that phrase is commonly understood. *See infra* pp. 876–877. While it is true that the Initiative imposes certain financial and accounting practices on governmental business activities, this is an obligation concerning record keeping and not the disclosure of public documents per se.

Furthermore, the reference to the declaration states "that the same laws enacted … [to] ensure open government shall be enforced upon governments in Colorado…." Laws that are intended to ensure open government already apply to government and the Initiative, as its proponents testified at the hearing before the Board, is not intended to impose any new "open government" requirements. As such, the use of the phrase "open government" to characterize the substance of the Initiative is misleading.

■ We also agree that these terms constitute the impermissible use of catch phrases and slogans. In *Say v. Baker,* 137 Colo. 155, 160, 322 P.2d 317, 320 (1958), the petitioner contended that a ballot proposal should include a reference to the "Freedom to Work." We rejected that contention noting that the phrase "Freedom to Work" was properly excluded on the grounds that it constituted a catch phrase or slogan. A "catch phrase" consists of "words which could form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amend-

ment." *In the Matter of the Proposed Initiative on Casino Gaming,* 649 P.2d 303, 308 (Colo.1982). Evaluating whether particular words constitute a slogan or catch phrase must be made in the context of contemporary public debate. *In the Matter of the Proposed Initiative on Workers Compensation,* 850 P.2d 144, 147 (Colo.1993).

We have little difficulty concluding that the phrases "consumer protection" and "open government" could form the basis of a slogan for use by those campaigning in favor of the Initiative. "Open government" is a commonly understood concept and, as used in contemporary public debate and law, deals with issues involving the requirements of public, as opposed to closed hearings and the access to government documents and records by the public. *See* Public (Open) Records, § 24–72–201, 10B C.R.S. (1988) (declaring that it is "the public policy of this state that all public records shall be open for inspection by any person…."); Open Meetings Law, § 24–6–401, 10A C.R.S. (1993 Supp.) (declaring it "to be a matter of statewide concern and the policy of this state that the formation of public policy is public business and may not be conducted in secret"). As such, the phrase "open government" deals with the accessibility of government information and the requirement that the formation of public policy be conducted under public scrutiny. Given this context, and the negative implication of "closed government," it is clear that the phrase "open government" could be used as a slogan for proponents of the Initiative.

Similarly, the phrase "consumer protection" could be used as a slogan by those supporting the Initiative. As used in contemporary public debate, "consumer protection" encompasses issues pertaining to the safety of goods and services, the assurance that those goods and services comport with governmental standards, and the absence of fraud in labeling and advertising. We have little doubt that characterizing an initiative as one intended to apply laws enacted for "consumer protection" constitutes a slogan or catch phrase that could be used by the Initiative's supporters.

Accordingly, we conclude that the reference to the declaration contained in the Ini-

tiative should not be included in the title, submission clause, and summary of the Initiative because it is misleading and contains catch phrases and slogans.[2]

## B

■ Petitioner next argues that a definition of the term "governmental business" must be included in the title and submission clause in order to fairly express the meaning of the Initiative.

The term "governmental business" is defined in section 3(2) of the Initiative as follows:

"Governmental business" or "governmental business activity" means a function of a government which offers any goods or services to the public for which there are reasonable substitutes provided by nongovernmental entities.

This definition is included in paragraph 3 of the Board's summary of the Initiative.

■ On a number of occasions we have addressed whether a particular definition must be included in a ballot title and submission clause. This determination turns on whether the definition "adopt[s] a new or controversial legal standard which would be of concern to all concerned with the issue", *In the Matter of the Proposed Initiative on Parental Notification of Abortions for Minors,* 794 P.2d 238, 242 (Colo.1990), or whether the definition concerns a term "which is within the common understanding of most voters." *In the Matter of the Proposed Initiative on Taxation III,* 832 P.2d 937, 941 (Colo.1992). Under these standards, we conclude that the definition need not be included in the ballot title and submission clause.

First, petitioner asserts but does not argue that the Initiative adopts a new or controversial legal standard. As such, he has offered no basis for rejecting the Board's determination not to include that definition in the ballot title and submission clause.

Second, we disagree with petitioner's argument that the term "governmental business" is not within the common understanding of most voters. There is nothing novel or cryptic about either the term "government" or "business" and merely combining those otherwise commonly understood terms does not create an obscure meaning unknown to most voters. Moreover, the title and submission clause describe in detail how governmental business activities shall be subject to the same legal requirements as similar nongovernmental businesses. The title and submission clause characterize the Initiative as providing "that a governmental business activity that provides goods and services to the public in competition with the private sector shall not be exempt from any tax that would be applicable to a similar private sector business." Thus, not only is the term "governmental business" not beyond the common understanding of most voters, the title and submission clause themselves provide a clear indication of what that term refers to. As such, it was not improper for the Board to omit the definition of a business activity in the title and submission clause.

## C

■ Petitioner argues that characterizing the Initiative as a "limit [on] the use of public resources for lobbying" seriously understates its meaning and effect and thus, does not fairly and accurately express the true intent of the Initiative.

Contrary to petitioner's suggestion, the Initiative does not purport to prohibit all governmental lobbying. Rather, it expressly permits the state to hire lobbyists, permits local governments to lobby through their elected officials, and circumscribes the means by which lobbying may be undertaken. As such, the characterization of the Initiative as a "limitation" as opposed to a prohibition fairly and accurately reflects the intent of the Initiative.

---

2. On remand, the Board should amend the title, in pertinent part, to read: "AN AMENDMENT TO THE COLORADO CONSTITUTION TO LIMIT THE USE OF PUBLIC RESOURCES...." The submission clause should be amended, in pertinent part, to read: "SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO LIMIT THE USE OF PUBLIC RESOURCES...." The summary should be amended, in pertinent part, to read: "This measure provides that public money, personnel, equipment, or supplies...."

## D

■ Petitioner next argues that by omitting any reference to "the extraordinary remedies" set forth in the Initiative, the Board has failed to fairly express its true meaning.

Section 1(6)(2)(a) of the Initiative provides: Upon the filing of a civil action, and upon good cause shown at the time of filing, the court shall enjoin the continuation of any activity complained of as being in violation of the provisions of this article pending final resolution of the civil action.

Petitioner asserts that "reference to the mandatory civil remedy provision contained in the measure should be included in the title submission clause in order to communicate to the voters that the proposed measure will work to terminate, not merely regulate, governmental businesses." Petitioner fails to explain how this provision serves to "terminate" governmental businesses and offers no relevant authority to support this contention.

■ The Board's duty is to summarize the central features of the initiative in a clear and concise manner. *In the Matter of the Proposed Initiative on the Increase of Taxes on Tobacco Products,* 756 P.2d 995, 999 (Colo.1988). Every effect that the proposed measure may have and each and every nuance and subtlety of a measure need not be set forth. *In the Matter of the Proposed Initiative on Limited Gaming in Burlington,* 830 P.2d 1023, 1036 (Colo.1992). Inclusion of the civil remedy provided in the Initiative is not required in order to fairly and accurately set forth the central tenets of the Initiative.

## E

■ Petitioner argues it is misleading to characterize the fiscal impacts of the Initiative in speculative terms, i.e., "[t]his measure *could* have a fiscal impact on state and local government." A separate fiscal impact statement is not required when that impact cannot reasonably be determined from the material submitted to the Board due to the variables or uncertainty implicated by the initiative. *In the Matter of the Proposed Initiative on "Tax Reform",* 797 P.2d 1283, 1291 (Colo.1990). In exercising its discretion as to whether and how to articulate the fiscal impact of a measure, the Board's decision must have some support in the record. *See In the Matter of the Proposed Initiative "W.A.T.E.R.",* 831 P.2d 1301, 1306 (Colo. 1992).

The evidence presented at the hearing demonstrates that the fiscal impact of the Initiative cannot be determined prior to its implementation.[3] Given this uncontroverted fact, the Board properly couched the potential fiscal impact of the measure in speculative terms. This is justified, as the Board noted in the summary, on the grounds that savings might result from the restrictions on governmental lobbying and additional expenditures might be incurred as a result of the imposition of tax liability, additional reporting and accounting requirements, and the abrogation of sovereign immunity. Petitioner does not, and could not, attempt to argue that the potential additional expenditures will always be greater than the potential savings. Accordingly, he has failed to show why couching the fiscal impact in speculative terms is misleading. The fiscal impact statement clearly and fairly sets forth the potential and unknown impact of the Initiative.

## F

Finally, petitioner argues that submission of the Initiative violates article X, section 20(3)(a) of the Colorado Constitution. This issue is beyond the scope of our review in this proceeding and accordingly, we decline to address it. *See In the Matter of the Proposed Initiative on School Pilot Program,* 874 P.2d 1066, 1071 n. 2 (Colo.1994); *In the Matter of the Proposed Initiative on Workers Compensation,* 850 P.2d 144, 145–46 (Colo.1993).

## IV

In sum, we conclude that the title, submission clause, and summary drafted by the

---

**3.** Both the Office of State Planning and Budgeting and the Executive Director of the Department of Local Affairs concluded that it was not possible to calculate the fiscal impact of the Initiative.

Board should not include a reference to the declaration contained in the Initiative because the declaration is misleading and contains slogans. We hold that the remainder of the Board's submission fairly and unambiguously sets forth the central features and intent of the Initiative. Accordingly, we affirm the ruling of the Board in part, reverse in part, and remand the matter to the Board with directions.